STATE OF NEBRASKA, EX REL. FOREIGN INSURANCE COMPANIES, v. THOMAS H. BENTON, AUDITOR OF PUBLIC ACCOUNTS.

1. **Insurance Companies:** FOREIGN COMPANIES: DEPOSITS. Under sections 20 and 23 of the Compiled Statutes of 1887, Ch. 43, a foreign insurance company, to be authorized to transact business in this state, must be possessed of at least $200,000 of actual paid-up capital, exclusive of any assets of such company as shall be deposited in any other state or territory for the special benefit or security of the insured therein, and must deposit in some one

of the United States or territories not less than $25,000 for the special benefit of persons insured therein in such company.

2. ———: ———: DUTY OF AUDITOR. The auditor of public accounts is clothed with authority to issue certificates to foreign insurance companies to transact business in this state, and it is his duty to issue certificates to none but solvent companies, which have complied with the statute of this state in all respects, and his action in the premises will not be controlled by mandamus unless there is a willful disregard of duty.

ORIGINAL application for mandamus.

*H. C. Brome,* for relator.

*Wm. Leese, Attorney General,* for respondent.

MAXWELL, J.

This is an application for a mandamus to compel the defendant, who is intrusted with the insurance department of the state, to grant certificates of authority to the relators to do business within this state. The agreed statement of facts on which the case is submitted shows that the defendant has required each company to deposit in this state a sum not less than $25,000 for the special benefit of the insured therein. The relators admit that each company is required to deposit not less than $25,000 in some one of the United States or territories for the special benefit or security of the insured, but contend that such deposit need not be made in this state, nor specially for the policy-holders therein.

Sec. 23, Chap. 43 of the Compiled Statutes of 1887, provides that, "It shall not be lawful for any insurance company, association, or partnership, organized or associated for any of the purposes specified in this act, incorporated by or organized under the laws of any other state of the United States, or any foreign government, directly or indirectly, to take risks or transact any business of insurance in this state, unless possessed of $200,000 of actual paid-up capital, exclusive of any assets of any such com-

pany as shall be deposited in any other states or territories for the special benefit or security of the insured therein. Any such company desiring to transact any such business as aforesaid, by an agent or agents in this state, shall appoint one attorney in each county in which agencies are established, resident at the county seat, and shall file with the auditor of state a written instrument, duly signed and sealed, authorizing such attorney of such company to acknowledge service of process for and in behalf of such company in this state, consenting that such service of process, *mesne* or final upon such attorney, shall be taken and held as valid as if served upon the company [according] to the laws of this or any other state, and waiving all claim or right of error by reason of such acknowledgment or service, and also a certified copy of their charter or deed of settlement, together with a statement under the oaths of the president or vice president, or other chief officers, and the secretary of the company for which they may act, stating the name of the company and the place where located, the amount of its capital, with a detailed statement of the facts and items as required from companies organized under the laws of this state, as per section 20 hereof. Such statement shall also show to the full satisfaction of the auditor of state that said company has deposited in some one of the United States or territories a sum not less than $25,000, for the special benefit or security of the insured therein, and shall file also a copy of the last annual report, if any, made under any law of the state by which such company was incorporated ; and no agent shall be allowed to transact business for any company whose capital is impaired by the liabilities, as stated in section 20 of this act, to the extent of 20 per cent thereof, while such deficiencies shall continue."

Sec. 20 of the act is as follows: "It shall be the duty of the president, or of the vice president and secretary, of each company organized under this act, or incorporated under

any law of this state, or doing business in this state, annually, on the 1st day of January of each year, or within 30 days thereafter, to prepare under oath and deposit in the office of the auditor of state a full, true, and complete statement of the condition of such company on the last day of the month preceding that in which such statement is filed, which last statement shall exhibit the following items and facts in the following form, viz.: 1st. The amount of capital stock of the company. 2d. The names of the officers. 3d. The name of the company and where located. 4th. The amount of capital stock paid up. 5th. The property or assets held by the company, specifying the value as near as may be of the real estate owned by such company. The amount of cash on hand and deposited in banks to the credit of the company, and in what bank the same is deposited. The amount of cash in the hands of agents and in course of transmission. The amount of loans secured by first mortgages on real estate, and its assessed valuation. The amount of all other bonds and loans, and how secured, with the rate of interest thereon. The amount due the company on which judgment has been obtained. The amount of stocks of this state, of the United States, of any incorporated city of this state, and of any other stock owned by the company, specifying the amount, numbers of shares, and par and market value of each kind of stock. The amount of stock held by such company as collateral security for loans, with amount loaned on each kind of stock, its par and market value. The amount of assessments on stock and premium notes paid and unpaid. The amount of interest actually due and unpaid. All other securities, and their value. The amount for which premium notes have been given, on which policies have been issued. 6th. The liabilities of such company, specifying the losses adjusted and due: Losses adjusted and not due. Losses unadjusted. Losses in suspense, and the cause thereof. Losses resisted and in litigation. Dividends either in scrip or cash, specifying the

amount of each declared, but not due. Dividends declared and due. The amount required to re-insure all outstanding risks on the basis of 40 per cent of the premium on all unexpired risks. The amount due banks or other creditors. The amount of money borrowed, and the security therefor. All other claims against the company. 7th. The income of the company during the previous year, specifying the amount received for premiums, exclusive of premium notes. The amount of premium notes received. The amount received for interest. The amount received for assessment calls on stock or notes, or premium notes. The amount received from all other sources. 8th. The expenditures during the preceding year, specifying the amount of losses paid during said term, stating how much of the same accrued prior and how much subsequent to the date of the preceding statement, and the amount at which losses were estimated in such preceding statement. The amount paid for dividends. The amount paid for commissions, salaries, expenses, and other charges of agents, clerks, and other employes. The amount paid for salaries, fees, and other charges of officers and directors. The amount paid for local, state, national internal revenue, and other taxes and duties. The amount paid for all other expenses, expenditures, including printing, stationery, rents, furniture, etc. 9th. The largest amount insured in any one risk. 10th. The amount of risks written during the year then ending. 11th. The amount of risks in force having less than one year to run. 12th. The amount of risks in force having more than one and not over three years to run. 13th. The amount of risks having more than three years to run. 14th. The following questions must be answered, viz.: Are dividends declared on premiums received for risks not terminated? The auditor of state shall withhold the certificate of authority from any such company neglecting or failing to comply with the provisions of this section."

It will be observed that Sec. 23 requires "a detailed

statement of the facts and items," as provided in section 20, to be made to the auditor by foreign insurance companies seeking to do business in this state, and that such statement shall show that the company applying for a certificate has deposited in some one of the United States or territories not less than $25,000 for the special benefit or security of the insured therein. It is contended by the relators that the word "therein." means in any state or territory of the United States, and that the deposit may be general for all the policies issued by the company. The meaning of the sentence is somewhat obscure, but taken in connection with Sec. 20, in regard to the detailed statement of the facts and items, as required from companies organized under the laws of this state, and it is apparent that the deposit of $25,000 in some one of the United States or territories is for the special benefit of the policyholders of such company. In other words, a foreign insurance company to do business in this state must possess at least $200,000 of actual paid-up capital, exclusive of any assets of such company as shall be deposited in any other states or territories for the special benefit of the insured therein, and in addition must deposit in some one of the United States or territories a sum not less than $25,000 for the special benefit or security of the policy-holders of such company in the states and territories where it has effected insurance. This provision no doubt is to prevent delay in the payment of losses to policy-holders, should any occur; and also to prevent the capital stock of such companies from being impaired by the payment of losses, as this fund must be kept up to the full requirements of the law at all times, and a diminution thereof would be good cause for revoking the certificate of such company. If it is said that the amount of such fund required by the statute is too small, or that it should be deposited in this state for the special benefit of policy-holders of the company issuing the policies therein, it is sufficient to say that

these considerations are for the legislature to act upon, and cannot be permitted to influence the court in its decision. The word "therein," so far as it relates to the place of deposit, is to be in "some one of the United States or territories," and we cannot restrict or enlarge this meaning without a forced construction of the language used, which no court should countenance. The claim of the defendant, that the statute requires each company seeking to do business within the state to deposit not less than $25,000 in this state, therefore, is unfounded.

2d.    Sec. 28 of the act provides that, "It shall be the duty of the auditor of the state, whenever he shall deem it expedient so to do, in his judgment, to appoint one or more persons, not officers, agents, or stockholders of any insurance company doing business in this state, to examine into the affairs and condition of any insurance company incorporated or doing business in this state, or to make such examination himself; and it shall be the duty of the officers or agents of such company or companies to cause their books to be opened for the inspection of the auditor or the person or persons so appointed, and otherwise facilitate such examination so far as may be in their power so to do, and for the purpose of arriving at the truth in such cases, the auditor, or person or persons so appointed by him, shall have power to examine under oath the officers or agents of any company, or others, if necessary, relative to the business and condition of said company; and whenever the auditor shall deem it best for the interest of the public so to do, he shall publish the result of such investigation in one or more papers of this state; and whenever it shall appear to the said auditor, from such examination, that the assets and funds of any company incorporated in this state, are reduced or impaired by the liabilities of said company, as described under the head of liabilities in the statement required by this act, more than 20 per cent below the paid-up capital stock required by this act, may

direct the officers thereof to require the stock-holders to pay in the amount of such deficiency within such a period as he may designate in such requisition; or he shall communicate the fact to the attorney of state, whose duty it shall then become to apply to the district court, or, if in vacation, to one of the judges thereof, for an order requiring said company to show cause why their business should not be closed; and the court or judge, as the case may be, shall thereupon proceed to hear the allegations and proofs of the respective parties; and in case it shall appear to the satisfaction of said court or judge that the assets and funds of said company are not sufficient as aforesaid, or that the interest of the public require it, the said court or judge shall decree a dissolution of said company, and a distribution of its effects; the said court or judge shall have the power to refer the application of the attorney of state to a referee, to inquire into and report upon the facts stated herein."

Sec. 31 provides that, "The auditor of state shall be authorized to examine into the condition and affairs of any insurance company, as provided for in this act, doing business in this state, not organized under the laws of this state, or cause such examination to be made by some person or persons appointed by him having no interest in any insurance company; and whenever it shall appear to the satisfaction of said auditor that the affairs of any such company are in an unsound condition, he shall revoke the certificate granted in behalf of such company; and shall cause the notification thereof to be published in some newspaper in general circulation, published at the state capital; and the agent or agents of such company are, after such notice, requested to discontinue the issuing of any new policies, or the renewal of any previously issued."

Sec. 35 provides that, "The necessary expenditures of any examination made or ordered to be made by the auditor of the state under this act, shall be certified to by him

and paid on his requisition by the company which is the subject of such examination; *Provided*, That the auditor of state shall have the power, upon receiving information that the capital of any company is impaired, to call upon any such company for a full statement of its condition, and in the event of refusal or neglect of any company to answer the requisition of the auditor as aforesaid, he shall proceed to make the examination required by this act, and to take the necessary action to terminate the business of said company in this state."

There are other provisions in regard to the duty of the auditor in granting, withholding, or canceling certificates to insurance companies to do business in this state. The design of the law is to permit none but solvent, well managed companies to insure property within the state. Insurance is effected as a precaution against the loss or destruction of property by fire. The premium is supposed to be graduated to conform to the risk—that is, if the risk is supposed to be great, the premium is correspondingly high. Experience has shown that a large portion of the persons insured never suffer any material loss from fire. Experience has also shown that losses are liable to occur at any time, and when least expected, hence the necessity of providing for indemnity in case of loss. If the party is in debt, it becomes necessary to insure his property to protect his creditors and prevent possible bankruptcy in case of loss, and if not in debt then as a means of reimbursement for the possible damage sustained. The necessity for reliable insurance is recognized by our statutes, and the intention of the law clearly is, that only reliable companies, with paid-up capital unimpaired, shall be permitted to do business in the state—companies that it is apparent from statements made under oath have the ability and do pay losses with reasonable promptness. The duties of the auditor are highly responsible, and are clearly pointed out in the statute, and he is required to issue a cer-

tificate to an insurance company only when it has fully complied with all the conditions upon which the right to grant such certificate depends. The duties are of such a nature that mandamus ought not to issue to control his action unless it is clear that there is a willful disregard of duty on his part. No such willful conduct is claimed, and therefore no mandamus will issue to control his action in the premises. The writ will therefore be denied.

WRIT DENIED.

THE other judges concur.